IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Dozier Payne Jr., ) | |
| ) | Civil Action No. 8:05-227-RBH-BHH |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Jo Anne B. Barnhart, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits under Title II of the Social Security Act.

**ADMINISTRATIVE PROCEEDINGS**

The plaintiff filed an application for disability insurance benefits on March 14, 2002, alleging that he became unable to work on August 18, 1997. The application was denied initially and on reconsideration by the Social Security Administration. The plaintiff requested a hearing. The administrative law judge, before whom the plaintiff and his

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

attorney appeared on April 29, 2004, considered the case *de novo*, and on September 22, 2004, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended.  The administrative law judge's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on December 10, 2004.  The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> 1.     The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and was insured for benefits through December 31, 2002, but not thereafter.
>
> 2.     The claimant has not engaged in substantial gainful activity since the alleged
>
> 3.     The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b).
>
> 4.     These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> 5.     The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.
>
> 6.     The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR §§ 404.1527 and 416.927).
>
> 7.     The claimant has the residual functional capacity for light work, reduced by restrictions which allow him to alternate sitting and standing at one hour intervals and require no more than occasional balancing, stooping, kneeling, crouching or crawling and occasional climbing of ramps and stairs but no climbing of ladders, ropes or scaffolds.  He can perform simple, routine work in a supervised, low stress environment (defined as work requiring few decisions) involving no more than occasional interaction with the general public.
>
> 8.     The claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416.965).

    9.     The claimant is "closely approaching advanced age" (20 CFR §§ 404.1563 and 416.963).

    10.     The claimant has a "limited" education (20 CFR §§ 404.1564 and 416.964).

    11.     The claimant has no transferable skills.

    12.     The claimant has the residual functional capacity to perform a significant range of light work (20 CFR §§ 404.1567 and 416.967).

    13.     Although the claimant's nonexertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rules 202.10 and 202.11 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as a sorter and as an inspector.

    14.     The claimant was not under a "disability," as defined in the Social Security Act, at any time through December 31, 2002 (20 CFR §§ 404.1520(g) and 416.920(g)).

(Tr. 21 - 22).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## **APPLICABLE LAW**

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §404.1503(a). *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389

(1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **EVIDENCE PRESENTED**

The record reveals that the plaintiff was 54 years on the date of the Commissioner's final decision (Tr. 310). He completed the eleventh grade and has past relevant work experience as a machinist and a tile setter's helper (Tr. 327-328).

The plaintiff has a history of lower back pain dating back at least to 1996. On August 20, 1997, the plaintiff was examined by Dr. Randall G. Drye, a neurosurgeon. Dr. Drye found evidence of symptomatic disc rupture on the left side at L5-S1 with corresponding S1 radiculopathy and evolving sensory loss and weakness, which had been unresponsive to conservative treatment (Tr. 266-267). Dr. Drye recommended L5-S1 laminectomy surgery, which was performed on August 26, 1997 (Tr. 264).

In the years since his back surgery, the plaintiff has continuously sought treatment for relief of his back pain which was not resolved after the surgery. There are

extensive records from his family doctor, Dr. Charmaine George, which demonstrate that the plaintiff's lower back and leg pain had returned. Dr. George prescribed pain medication, and over the next several years, a variety of medications were tried, with varying success.

The plaintiff was admitted to Providence Hospital on July 24, 2000 for acute alcohol withdrawal, abnormal liver function tests secondary to alcohol abuse, and depression. The plaintiff was placed on Zoloft for his depression. After his acute symptoms were treated at Providence, the plaintiff was transferred to Richland Springs for alcohol treatment (Tr. 131 -132). At the hearing, the plaintiff testified that he has not had a drink in "almost a year." (Tr. 322).

## **ANALYSIS**

The plaintiff alleges that the ALJ erred (1) in failing to comply with SSR 00-4p; (2) in posing a faulty hypothetical to the vocational expert; (3) in rejecting the opinion of the plaintiff's treating physician; and (4) in failing to properly evaluate the plaintiff's pain and other symptoms.

### *SSR 00-4p*

The ALJ found that the plaintiff has the residual functional capacity for light work, with the following additional limitations: "simple, routine work, in a supervised, low stress environment (defined as work requiring few decisions) involving no more than occasional interaction with the general public." (Tr. 21). The VE testified that two occupations met the ALJ's hypothetical: sorter and inspector.[2] The plaintiff argues that the

---

[2] The job of "sorter" apparently refers to a garment sorter, DOT # 222.687-014, though the VE cited an incorrect DOT number. The garment sorter job, as described in the DOT, requires only light exertion, and does not require balancing, stooping, kneeling, crouching, crawling or climbing, and does not require public interaction. The DOT listing describes the job as follows: "sorts finished garments, such as shirts, dresses and pajamas, according to Lot and Size numbers recorded on tags and labels attached to garments." The job of inspector is described in the DOT listing # 727.682-062 as : "Inspects finished or in-process dry cell or storage batteries for defects, such as dents, scratches, short electrodes of missing parts: examines batteries to detect defects and places defective batteries in box. May test batteries, using voltmeters and ammeters. May replace damaged parts."

limitations identified by the ALJ are not discussed in the Dictionary of Occupational Title's description of the occupations cited by the ALJ.

> Social Security Ruling 00-4p provides in pertinent part:
>
> When a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT. In these situations, the adjudicator will:
>
> Ask the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT; and
>
> If the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, 2000 WL 1898704, *3.

The ALJ did not obtain testimony from the vocational expert to explain why the plaintiff would be able to perform these jobs. While the DOT clearly lists both of these jobs as unskilled and not requiring public contact, it is unclear whether they are considered "low stress", *i.e.*, requiring few decisions. The DOT definitions of both of these jobs indicate that they would require making decisions and more than simple routine work. Thus, it appears to this court that it was incumbent upon the ALJ to specifically resolve the conflict between the vocational expert's testimony, the hypothetical, and the DOT job listings. Accordingly, the ALJ improperly relied on the vocational expert testimony.

*Hypothetical Question*

The plaintiff next contends that the ALJ erred in failing to define in his hypothetical to the vocational expert what he meant by a low stress environment. The Fourth Circuit Court of Appeals has held that "[i]n order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all

7

of the claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). The questions, however, need only reflect those impairments that are supported by the record. *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3rd Cir. 1987). The purpose of a vocational expert's testimony is to assist in determining whether jobs exist in the economy which a particular claimant could perform. *Id.* The ALJ, however, has great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions, so long as there is substantial evidence to support the ultimate question. *See Martinez v. Heckler,* 807 F.2d 771, 774 (9th Cir. 1986).

In his hypothetical to the vocational expert, the ALJ stated that the individual would "require simple, routine work, a low stress environment, and that's an environment which requires few decisions." (Tr. 328). The ALJ provided no more information, except that the individual would be considered "literate." The record however, indicates that the plaintiff's achievement test scores show him to function at the kindergarten to second grade level, and to have "borderline intellectual functioning", facts acknowledged by the ALJ (Tr. 17). While it may be true, as stated by the ALJ, that "the plaintiff's test scores are inconsistent with his 11 years in regular education and his semi-skilled work history and may be due to mild dementia from [his] long history of heavy alcohol consumption", it appears that the hypothetical should have at least addressed the plaintiff's reduced mental functioning. As pointed out by the plaintiff, SSR 85-15 states, in pertinent part, that:

> The reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances. The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day. A person may become panicked and develop palpitations, shortness of breath or feel faint while riding in an elevator; another may experience terror and begin to hallucinate when approached by a stranger asking a question. Thus, the

> mentally impaired may have difficulty meeting the requirement of even so-called 'low-stress' jobs.
> Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job. . . . Any impairment related limitations created by an individual's response to demands of work, however, must be reflected in the RFC assessment.

SSR 85-15, 1985 WL 56857.

The plaintiff in this case clearly had borderline intellectual functioning and depression, two key factors in work related stress. The ALJ did not ask questions of the vocational expert that ensured the VE had an accurate picture of the plaintiff's abilities and limitations. *See also* SSR 96-8p (requiring narrative discussion of evidence in making RFC assessment). The failure of the ALJ to include all the plaintiff's limitations in his hypothetical to the VE, coupled with the failure to discuss how the plaintiff's mental impairments affected his ability to work, was error. Thus, the vocational expert's responses to the ALJ's hypothetical cannot constitute sufficient evidence to support a finding that the plaintiff was capable of substantial gainful employment.

***Treating Physician Rule***

The plaintiff argues that the ALJ did not properly evaluate the opinion of his treating physician, Dr. Charmaine George. The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. *See* 20 C.F.R. §416.927(d)(2) (2004); *Mastro v. Apfel*, 370 F.3d 171 (4th Cir. 2001). However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-2p. Furthermore, even

if the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

On July 7, 2003, Dr. George completed a detailed Physical Capacities Evaluation in which she found that the plaintiff could perform sedentary exertional level work, but had additional non-exertional limitations which rendered him disabled. Dr. George found that the plaintiff could never work around machinery while taking pain medication for his back. She also stated that the plaintiff could not reach, push or pull, and that the plaintiff sometimes requires a cane. Dr. George stated that the plaintiff "has been ill for . . . 6 years since the initial disc herniation and repair," and she opined that the plaintiff has reached maximum medical improvement (Tr. 292 - 294).

In his discussion of Dr. George's opinion, the ALJ notes that Dr. George is an internal medicine specialist. The ALJ goes on to find that Dr. George's opinion is not supported by her treatment notes. The ALJ then states:

> Considering the absence of report of significant functional limitation objectively demonstrated on examinations, the absence of evidence of lumbar radiculopathy on EMG/NCS, and Dr. George's specialty as an Internist and not a neurologist or orthopedist, I do not give great weight to Dr. George's opinion.

Dr. George, admittedly an internal medicine specialist, has been treating the plaintiff since at least 1997 (see, e.g. Tr. 206). In fact, Dr. George referred the plaintiff to Dr. Drye who performed the back surgery on the plaintiff. At various times over the past four years, Dr. George's notes have indicated that the plaintiff continues to suffer from back and neck pain and resulting limitations, even after the surgery. On February 28, 2002, Dr. George noted that the plaintiff had stiffness across his lower back and pain shooting down his left leg. Dr. George diagnosed left lumbar radiculopathy. Though she noted that

Vicodin helped "somewhat," she added Vioxx to the plaintiff's medication (Tr. 190). On April 16, 2002, Dr. George noted that the plaintiff had worsening pain in his lower back radiating to his left leg, and she stated "[t]he Vicodin ES is not doing the trick anymore." (Tr. 189). Consistently, over the next two years, Dr. George's treatment notes show that the plaintiff had pain in his back and leg and that the pain was not resolved by medication (Tr. 186; 258; 259; 260; 262). On August 14, 2003, Dr. George noted that the plaintiff was "having difficulty sitting up straight" because of his back pain (Tr. 262).

The ALJ noted that the tests run on the plaintiff showed no lumbar radiculopathy, thus providing a basis for rejecting or discounting Dr. George's opinion. On December 5, 2003, the plaintiff underwent EMG and nerve conduction studies of his left lower extremity. The results showed left tibial motor neuropathy and left peroneal motor neuropathy, mild.[3] Dr. Shissias, the examining neurologist, noted that there was no "electrophysiological evidence suggesting specifically a lumbar radiculopathy." However, he suggested "supportive treatment" for the neuropathy and increased the plaintiff's Neurontin to 1800 mg a day (Tr. 256-257). While this report does suggest no radiculopathy, it also clearly shows that the plaintiff has symptoms which cause pain and limitations. As such, it appears that the report actually supports Dr. George's opinion. Moreover, a lumbar MRI performed on November 21, 2003, prior to the EMG study, showed "a lateralizing left sided dysprotrusion at L5, S1 ... imping[ing] upon the left S1 nerve root" (Tr. 297).

The ALJ does not state what weight, if any, he gave to Dr. George's opinion. Social Security Ruling 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p, 1996 WL 374188, *5. Moreover, it was error for the ALJ to not give "controlling weight" to Dr. George's opinion. While it is

---

[3]Neuropathy is defined as "a functional disturbance or pathological change in the peripheral nervous system." DORLAND'S Illustrated Medical Dictionary 1212 (29th ed.).

true that Dr. George is not an orthopedist or a neurologist, she is the plaintiff's primary care physician and she has provided continuing and ongoing care to the plaintiff. Additionally, not only was there no persuasive contradictory evidence, there is substantial supportive evidence of Dr. George's opinion, as set forth in the medical evidence above. The plaintiff has complained of back and leg pain consistently and his condition has been treated with narcotic pain medication which has not completely resolved the pain. The medical records, as outlined above, are consistent with the plaintiff's complaints. Moreover, the consultative examining physician noted limited range of motion in the back and a positive leg raising test (Tr. 208-209).

Based upon the foregoing, this court finds that the ALJ failed to properly evaluate the opinion of the plaintiff's treating physician.

***Plaintiff's Credibility***

Lastly, the plaintiff contends that the ALJ erred in failing to evaluate his pain pursuant to Fourth Circuit case law. The ALJ stated the following with regard to the plaintiff's credibility:

> Considering the claimant's activities; the lack of hospitalizations or frequent emergency room visits for pain; the lack of alternative treatment modalities, other than medication, for pain; the absence of treatment by a mental health professional and no recommendation for such; the absence of finding on examination of strength deficits or gait abnormality; and the opinion of Dr. George notwithstanding, I do not find the allegations of disabling pain and limited functional capacity to be credible.

(Tr. 18).

A claimant's allegations of pain, disability and limited function itself, or its severity, need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to

12

which the impairment can reasonably be expected to cause the pain the claimant alleges she suffers. A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§404.1529(c)(4) and 416.929(c)(4). Furthermore, "a formalistic factor by factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence he relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001).

The plaintiff testified that he takes pain medication daily, as well as a muscle relaxer (Tr. 314). He testified that the medication does not completely take away the pain (Tr. 317). He also testified that he uses a cane at times, particularly when he is walking for exercise (Tr. 316). The plaintiff stated that he can sit for 30 minutes before he starts feeling uncomfortable and that he can only walk, at most, a couple of blocks (Tr. 318). He testified that he mostly watches television all day and that he sometimes has to take a nap because the medication makes him drowsy (Tr. 320-321). The plaintiff stated that he does not drive when he is taking the medication, but that occasionally he picks his son up at school (Tr. 324).

The plaintiff clearly suffers from back pain and, at the least, neuropathy, a medical condition reasonably likely to cause the symptoms claimed. Further, the symptoms which the plaintiff testified he experienced are reasonably consistent with the medical evidence and the condition from which he suffers. The ALJ relied upon the fact that there have not been frequent hospitalizations. However, the record indicates that the plaintiff has been hospitalized or treated in the emergency room on at least three occasions since his back surgery. All three hospitalizations related to, in part, the plaintiff's pain, numbness in his leg, or reactions to his pain medications (Tr. 152; 158-165; 166-169).

In finding the plaintiff less than credible, the ALJ also relied upon the "lack of alternative treatment modalities other than medication". The plaintiff had back surgery in 1997, and has consistently experienced pain since then. There is no indication in the record that the plaintiff's doctors have recommended any other treatment which he has refused or not sought. To find the plaintiff less than credible because the only alternative he has is narcotic pain medication seems to miss the mark. The extensive medical records demonstrate that the plaintiff suffers from lower back pain for which he has found little relief. In addition, both the consulting physicians specifically noted that the plaintiff had pain radiating into his left leg as a result of chronic low back pain (Tr. 171-172; 207-209). Clearly, the ALJ failed to properly evaluate the plaintiff's subjective complaints.

## **CONCLUSION AND RECOMMENDATION**

The record does not contain substantial evidence supporting the Commissioner's decision denying the plaintiff disability benefits. Reopening the record for more evidence would serve no purpose. *See Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974). Accordingly, this court recommends that the Commissioner's decision be reversed and that the case be remanded to the Commissioner to take appropriate action for the awarding of benefits.

s/ Bruce H. Hendricks
United States Magistrate Judge

January 25, 2006
Greenville South Carolina