IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Dozier Payne, Jr., | ) | Civil Action No. 8:05-227-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **O R D E R** |
| Jo Anne B. Barnhart, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The plaintiff, Dozier Payne, Jr., brought this action pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 405(g) of that Act provides: "[T]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964); see, e.g., Daniel v. Gardner, 404 F.2d 889 (4th Cir. 1968); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966); Tyler v. Weinberger, 409 F.Supp. 776 (E.D. Va. 1976). This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner. See, e.g., Vitek v. Finch, 438 F.2d 1157 (4th Cir. 1971); Hicks v. Gardner, 393 F.2d 299 (4th Cir. 1968). "[T]he court [must] uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As noted by Judge Sobeloff in Flack v. Cohen, 413 F.2d 278 (4th Cir. 1969), "[f]rom this it does not

follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." Id. at 279. "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." Vitek, 438 F.2d at 1157-58.

## Administrative Proceedings

In this case, the plaintiff applied for the aforementioned benefits on March 14, 2002, alleging disability as of August 18, 1997. The plaintiff's claim was denied initially and upon reconsideration. The plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on April 29, 2004. The ALJ thereafter denied plaintiff's claim in a decision issued on September 22, 2004. This determination became the final decision of the Commissioner when it was adopted by the Appeals Council on December 10, 2004. The plaintiff then filed this action in the United States District Court for judicial review.

The ALJ made the following findings in this case:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and was insured for benefits through December 31, 2002, but not thereafter.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR §§ 404.1527 and 416.927).

7. The claimant has the residual functional capacity for light work, reduced by restrictions which allow him to alternate sitting and standing at one hour intervals and require no more than occasional balancing, stooping, kneeling, crouching or crawling and occasional climbing of ramps and stairs but no climbing of ladders, ropes or scaffolds. He can perform simple, routine work in a supervised, low stress environment (defined as work requiring few decisions) involving no more than occasional interaction with the general public.

8. The claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416.965).

9. The claimant is "closely approaching advanced age" (20 CFR §§ 404.1563 and 416.963).

10. The claimant has a "limited" education (20 CFR §§ 404.1564 and 416.964).

11. The claimant has no transferable skills.

12. The claimant has the residual functional capacity to perform a significant range of light work (20 CFR §§ 404.1567 and 416.967).

13. Although the claimant's nonexertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rules 202.10 and 202.11 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as a sorter and as an inspector.

14. The claimant was not under a "disability," as defined in the Social Security Act, at any time through December 31, 2002 (20 CFR §§ 404.1520(g) and 416.920(g)).

## **Facts**

A review of the record indicates that the plaintiff was fifty-four (54) years old as of the date of the Commissioner's final decision. Plaintiff has an eleventh-grade education and has past relevant work experience as a machinist and as a tile setter's helper. Plaintiff alleges disability due to a back injury, pain in his left leg, and a nerve problem. Plaintiff has a history of low back pain dating back to at least 1996. On August 20, 1997, the plaintiff was examined by Dr. Randall G. Drye, a neurosurgeon. Dr. Drye found evidence of symptomatic disc rupture on the left side at L5-S1 with corresponding S1

radiculopathy and evolving sensory loss and weakness, which had been unresponsive to conservative treatment. Dr. Drye recommended L5-S1 laminectomy surgery, which was performed on August 26, 1997. In the years since his back surgery, the plaintiff has continuously sought treatment for relief of his back pain which was not resolved after surgery. There are extensive records from his family doctor, Dr. Charmaine George, which demonstrate that the plaintiff's lower back and leg pain had returned. Dr. George prescribed pain medication, and over the next several years, a variety of medications were prescribed, with varying success.

The plaintiff was admitted to Providence Hospital on July 24, 2000, for acute alcohol withdrawal, abnormal liver function test secondary to alcohol abuse, and depression. The plaintiff was placed on Zoloft for his depression. After his acute symptoms were treated at Providence, the plaintiff was transferred to Richland Springs for alcohol treatment. At the hearing, the plaintiff testified that he had not had a drink in "almost a year."

## **Appeal from the Commissioner's Decision**

Pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., this action was referred to United States Magistrate Judge Bruce H. Hendricks. On January 26, 2006, Magistrate Judge Hendricks filed a Report and Recommendation ("Report") which recommends to this court that the decision of the Commissioner be reversed and the case be remanded to the Commissioner to take appropriate action for the awarding of benefits. The defendant filed objections to the Report.

In conducting its review of the Magistrate Judge's Report, this court applies the following standard:

> The Magistrate Judge makes only a recommendation to the court, to which any party may file written objections . . . . The court is not bound by the recommendation of the Magistrate Judge but, instead, retains responsibility for the final determination. The

> court is required to make a *de novo* determination of those portions of the report or specified findings or recommendation as to which an objection is made. However, the court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the Magistrate Judge as to those portions of the report and recommendation to which no objections are addressed. While the level of scrutiny entailed by the court's review of the report thus depends on whether or not objections have been filed, in either case, the court is free, after review, to accept, reject, or modify any of the Magistrate Judge's findings or recommendations.

Wallace v. Housing Auth. of the City of Columbia, 791 F.Supp. 137, 138 (D.S.C. 1992) (internal citations omitted).

The defendant's objections are as follows.

**SSR 00-4p**

Social Security Ruling 00-4p provides in pertinent part:

> When a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT. In these situations, the adjudicator will:
>
> Ask the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT; and
>
> If the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, 2000 WL 1898704, *3 (S.S.A.).

In the Report, the Magistrate Judge concludes that the ALJ did not follow SSR 00-4p. The defendant objects to this conclusion and argues that the ALJ complied with SSR 00-4p. The defendant points out that in the ALJ's hypothetical question to the VE, the ALJ asked the VE to

> Assume an individual who is limited to doing light exertional work as defined in the regulations and assume an individual of the claimant's education and past job experience with restrictions that require simple routine work, a low stress environment, and that's an environment which requires few decisions. Because of the problems with the back, no more than occasional balancing, stooping, kneeling, crouching, and

5

crawling; no ladders, ropes, or scaffolds; occasional ramps and stairs.

The defendant notes that the ALJ later added additional limitations to the hypothetical question that included the requirement of a sit/stand option and only occasional public interaction. The defendant states that with these limitations, including the limitation to low stress jobs that required few decisions, the VE testified that the hypothetical individual could perform the light and unskilled jobs of sorter and inspector. The defendant argues that the job of sorter is a light unskilled job that does not require balancing, stooping, kneeling, crouching, crawling, or climbing, does not require public interaction, and entails "sort[ing] finished garments such as shirts, dresses, pajamas, according to Lot and Size numbers recorded on tags and labels attached to garments." Additionally, the defendant states that the job of inspector also is an unskilled light job that does not require balancing, stooping, kneeling, crouching, crawling, climbing, or public contact, and entails "inspect[ing] finished or in-process dry cell or storage batteries for defects, such as dents, scratches, short electrodes or missing parts; examin[ing] batteries to defects and plac[ing] defective batteries in box[es] . . . test[ing] batteries, using voltmeters and ammeters . . . [and] replac[ing] damaged parts."

Defendant argues that the fact that these jobs required some minimal, predictable, and routine decisions does not mean that they were inconsistent with a limitation to low-stress work (i.e., few decisions) per se.

This court finds the defendant's objections in this regard to be without merit. Although the Dictionary of Occupational Title's ("DOT") clearly lists both of the jobs cited by the VE as unskilled and not requiring public contact, this court concurs with the Magistrate Judge that it is unclear whether the jobs are considered "low stress," i.e., requiring few decisions. As noted by the Magistrate Judge in the Report, the DOT definitions of both of these jobs indicate that they would require making

6

decisions and more than simple routine work. The ALJ did not obtain testimony from the vocational expert to explain why the plaintiff would be able to perform these jobs. Notably, SSR 00-4p imposes an affirmative duty upon the ALJ to ask the VE about any possible conflict between the vocational testimony and the information provided in the DOT. This court finds that the ALJ failed to do so.

It appears to this court that the defendant argues in her objections that because the jobs cited by the VE are unskilled, such is indicative of low stress limitations. However, it must be noted that SSR 85-15 provides guidance on this issue and makes clear that whether a job is skilled or unskilled has nothing to do with whether it meets stress limitations.

Social Security Ruling 85-15 provides in pertinent part:

Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A Claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job . . . . Any impairment related limitations created by an individual's response to demands of work, however, must be reflected.

SSR 85-15, 1985 WL 56857, *6 (S.S.A.).

Finally, this court concurs with the Magistrate Judge that pursuant to SSR 00-4p, it was incumbent upon the ALJ to specifically resolve the conflict between the VE's testimony, the hypothetical, and the DOT job listings. Indeed, it appears to this court that SSR 00-4p was implemented to prevent ALJ's from wholesale adopting vocational testimony as a means to deny cases without any real analysis of the vocational issues. Accordingly, this court concurs with the Magistrate Judge's conclusion that the ALJ improperly relied on the VE testimony.

**Hypothetical Question**

The defendant next states that the Magistrate Judge concludes in the Report that the ALJ's

hypothetical question to the VE was inadequate because he did not: (1) sufficiently define what he meant by "low stress," and (2) account for the plaintiff's mental limitations. However, the defendant argues that ALJ defined a low-stress environment as one requiring but few decisions, and he accounted for the plaintiff's mental limitations by limiting him to "simple routine" (i.e., unskilled) work. The defendant further notes that the ALJ stated that the plaintiff had eleven years of regular education and had performed semi-skilled work in the past. Defendant argues that by finding that the plaintiff was unable to perform his past semi-skilled work and limiting his unskilled work, the ALJ accommodated the plaintiff's mental limitations.

This court finds that it has to go no further than the Magistrate Judge's Report to address this objection. As mentioned above, the Magistrate Judge concludes in the Report that the ALJ erred in failing to define in his hypothetical to the VE what he meant by a low-stress environment. This court finds that the Magistrate Judge's conclusion clearly explains the deficiencies at issue:

> In his hypothetical to the vocational expert, the ALJ stated that the individual would "require simple, routine work, a low-stress environment, and that's an environment which requires few decisions." The ALJ provided no more information, except that the individual would be considered "literate." The record however, indicates that the plaintiff's achievement tests scores show him to function at the kindergarten to second grade level and to have "borderline intellectual functioning," facts acknowledged by the ALJ. While it may be true, as stated by the ALJ, that "the plaintiff's test scores are inconsistent with his 11 years in regular education and his semi-skilled work history and may be due to mild dementia from [his] long history of heavy alcohol consumption", it appears that the hypothetical should have at least addressed the plaintiff's reduced mental functioning.

The Magistrate Judge next cites to SSR 85-15, which as mentioned above, states that the skill level of a job has nothing to do with a stress restriction in a hypothetical question to the VE. This court finds that the Magistrate Judge correctly concludes:

> The Plaintiff in this case clearly had borderline intellectual functioning and depression,

two key factors in work related stress. The ALJ did not ask questions of the vocational expert that ensured the VE had an accurate picture of the Plaintiff's abilities and limitations. See also SSR 96-8p (requiring narrative discussion of evidence in making RFC assessments). The failure of the ALJ to include all of the Plaintiff's limitations in his hypothetical to the VE, coupled with the failure to discuss how the Plaintiff's mental impairments affected his ability to work, was error. Thus, the vocational expert's responses to the ALJ's hypothetical cannot constitute sufficient evidence to support a finding that the Plaintiff was capable of substantial gainful employment.

For the reasons stated above, the court find the defendant's objections in this regard are without merit.

**<u>Treating Physician Rule</u>**

In the Report, the Magistrate Judge concludes that the ALJ failed to properly evaluate the opinion of the plaintiff's treating physician. The Magistrate Judge notes that the opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. See 20 C.F.R. § 416.927(d)(2) (2004); <u>Mastro v. Apfel</u>, 370 F.3d 171 (4th Cir. 2001). However, the Magistrate Judge also acknowledged that statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-2p. Furthermore, even if the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. <u>Blalock v. Richardson</u>, 483 F.2d 773, 775 (4th Cir. 1972).

The Magistrate Judge notes in the Report that on July 7, 2003, Dr. Charmaine George, the plaintiff's treating physician, completed a detailed Physical Capacities Evaluation in which she found that the plaintiff could perform sedentary exertional level work, but had additional non-exertional

9

limitations which rendered him disabled. Dr. George found that the plaintiff could never work around machinery while taking pain medication for his back. She also stated that the plaintiff could not reach, push or pull, and that the plaintiff sometimes requires a cane. Dr. George stated that the plaintiff "has been ill for . . . 6 years since the initial disc herniation and repair," and she opined that the plaintiff has reached maximum medical improvement.

The Magistrate Judge also states that although Dr. George is admittedly an internal medicine specialist, she has been treating the plaintiff since at least 1997. In fact, Dr. George referred the plaintiff to Dr. Drye who performed the back surgery on the plaintiff. At various times over the past four years, Dr. George's notes have indicated that the plaintiff continues to suffer from back and neck pain and resulting limitations, even after the surgery. On February 28, 2002, Dr. George noted that the plaintiff had stiffness across his lower back and pain shooting down his left leg. Dr. George diagnosed left lumbar radiculopathy. Though she noted that Vicodin helped "somewhat," she added Vioxx to the plaintiff's medication. On April 16, 2002, Dr. George noted that the plaintiff had worsening pain in his lower back radiating to his left leg, and she stated "[t]he Vicodin ES is not doing the trick anymore." Consistently, over the next two years, Dr. George's treatment notes show that the plaintiff had pain in his back and leg and that the pain was not resolved by medication. On August 14, 2003, Dr. George noted that the plaintiff was "having difficulty sitting up straight" because of his back pain.

The Magistrate Judge states that the ALJ noted that the tests run on the plaintiff showed no lumbar radiculopathy, thus providing a basis for rejecting or discounting Dr. George's opinion. On December 5, 2003, the plaintiff underwent EMG and nerve conduction studies of his left lower extremity. The results showed left tibial motor neuropathy and left peroneal motor neuropathy, mild. Dr. Shissias, the examining neurologist, noted that there was no "electrophysiological evidence

suggesting specifically a lumbar radiculopathy." However, he suggested "supportive treatment" for the neuropathy and increased the plaintiff's Neurontin to 1800 mg a day.  The Magistrate Judge concludes that while this report does suggest no radiculopathy, it also clearly shows on the other hand, that the plaintiff has neuropathy, which supports the pain and limitations diagnosed by the plaintiff's treating physician.  As such, the Magistrate Judge finds that it appears that the report actually supports Dr. George's opinion.  Moreover, the Magistrate Judge points out that a lumbar MRI performed on November 21, 2003, prior to the EMG study, showed "a lateralizing left sided dysprotrusion at L5, S1 . . . imping[ing] upon the left S1 nerve root."

In the Report, the Magistrate Judge further notes that the ALJ does not state what weight, if any, he gave to Dr. George's opinion.  However, Social Security Ruling 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion.  SSR 96-2p, 1996 WL 374188, *5 (S.S.A.).  Moreover, the Magistrate Judge finds that it was error for the ALJ to not give "controlling weight" to Dr. George's opinion.  The Magistrate Judge notes that while it is true that Dr. George is not an orthopedist or a neurologist, she is the plaintiff's primary care physician and she has provided continuing and ongoing care to the plaintiff.  Additionally, the Magistrate Judge finds that not only was there no persuasive contradictory evidence, there is substantial supportive evidence of Dr. George's opinion, as set forth in the medical evidence cited.  The plaintiff has complained of back and leg pain consistently and his condition has been treated with narcotic pain medication which has not completely resolved the pain.  The Magistrate Judge finds that the medical records are consistent with the plaintiff's complaints.  Moreover, the consultative examining physician noted limited range of motion in the back and a positive leg raising test.  Based upon such, the Magistrate Judge concludes that the ALJ failed to properly evaluate the opinion of the plaintiff's treating physician.

In the objections, the defendant acknowledges that a treating physician's opinion is entitled to controlling weight if it well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. However, the defendant argues that Dr. George's opinion was inconsistent with other evidence in the record. In support of this contention, the defendant cites to the following physician's findings:

> **J. Russell Williams, M.D.**, who found that Plaintiff had full and symmetrical motor strength and symmetrical reflexes, and that he could stand on his heels and toes, squat, stand, and sit without difficulty (Tr. 171). **Mitchell Hegquist, M.D.**, found Plaintiff had normal strength and ranges of motion in the extremities; normal grip strength and manipulative abilities; normal neurological functioning, normal reflexes, and normal gait; and no muscle spasms, atrophy, motor and sensory deficits, joint tenderness, swelling, deformity, or instability (Tr. 208). **Charles Shissias, M.D.**, in December 2003, found Plaintiff demonstrated normal strength in all extremities; normal coordination, gait, sensory functioning, and reflexes; no atrophy; and no evidence of radiculopathy, based on an EMG and nerve conduction studies (Tr. 256-57, 295-96). In July 2002, **Richard Weymouth, M.D.**, a State agency physician, concluded that Plaintiff could perform medium work (Tr. 246-53), and in May 2003, **Robert Kukla, M.D.**, another State agency physician, concluded Plaintiff could do light work with some postural limitations (Tr. 215-21).

Defendant's Objections to the Report of the Magistrate Judge, Entry # 9, p. 5-6 (emphasis added). Therefore, the defendant argues the ALJ was not required to assign controlling weight to Dr. George's opinion because it was inconsistent with other substantial evidence of record.

This court finds that the defendant's objections in this regard are without merit and are disingenuous. The court notes that contrary to the defendant's assertions otherwise, each of the physicians the defendant refers to in her objections also made findings consistent with the plaintiff's complaints of back and leg pain. Specifically, **J. Russell Williams, M.D.**, found that the plaintiff could sit without difficulty, but in the supine position (lying on the back, face upward), he experienced lower back pain when Dr. Williams attempted to touch his left knee and hip (Tr. 171). Dr. Williams also

noted pain with straight leg raise testing at 45 degrees, and at 60 degrees on the right (Tr. 172). Significantly, Dr. Williams diagnosed the plaintiff with lower back pain, status post surgery repair. Next, **Mitchell Hegquist, M.D.**, reported that plaintiff's x-rays showed that there is end-plate sclerosis present from level L1 to S1, which is worse at level L5-S1, and that there is probable facet sclerosis present in the lower lumbosacral spine (Tr. 209). Dr. Hegquist diagnosed the plaintiff with residual chronic lower back pain and radiation of pain down the posterior aspect of the left leg (Tr. 209). **Charles Shissias, M.D.**,diagnosed the plaintiff with chronic lower back pain, recommended a nerve conduction study, and prescribed Neurontin (Tr. 297). Dr. Shissias reported that the lower EMG and nerve conduction studies showed left tibial motor neuropathy, and mild left peroneal motor neuropathy, and ruled out lumbar radiculopathy (Tr. 256-57). Dr. Shissias offered supportive treatment and increased the plaintiff's Neurontin. **Richard Weymouth, M.D.**, a State agency physician, also concluded that the plaintiff had lower back pain. Finally, **Robert Kukla, M.D.**, another State agency physician, concluded that the plaintiff still had lower back pain.

This court notes that in the initial brief in support of the Commissioner's decision, the defendant included all of the above information concerning the physicians' findings of chronic back and leg pain, however, in the objections to the Magistrate Judge's Report those same findings were conveniently omitted. For the reasons stated above, this court finds that the aforementioned objections are without merit. This court agrees with the Magistrate Judge's conclusion that the medical records in this case are consistent with the plaintiff's complaints and the treating physician's opinion. As such, this court concurs with the Magistrate Judge conclusion that the ALJ failed to properly evaluate and give controlling weight to the opinion of the plaintiff's treating physician. Furthermore, as the Magistrate Judge notes, the ALJ in this case did not even state what weight, if any, he gave to Dr. George's

opinion. However, Social Security Ruling 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p, 1996 WL 374188, *5 (S.S.A.).

The court notes that the defendant also notes in her objections that Dr. George's July 2003 opinion was rendered several months after December 31, 2002, when the plaintiff's insured status expired. Therefore, the defendant argues that Dr. George's opinion is not controlling with regard to whether the plaintiff was disabled during the time period relevant to plaintiff's claim for DIB benefits.

The court also finds this objection to be without merit. The law in the Fourth Circuit is clear that a retrospective opinion of impairment by the treating physician is covered by the treating physician rule. Notably, the Fourth Circuit found in <u>Wilkins v. Secretary, Dept. of Health and Human Servs.</u>, 953 F.2d 93, 96 (4th Cir. 1991), that "[t]his court has recognized that a treating physician may properly offer a retrospective opinion on the past extent of an impairment." In the case at bar, Dr. George has extensive treatment notes during the insured period, and the fact that her opinion was written thereafter is irrelevant.

### **Plaintiff's Credibility**

The defendant also objects to the Magistrate Judge's conclusion that the ALJ improperly evaluated the plaintiff's credibility. It must be noted that the ALJ only stated the following with regard to the plaintiff's credibility:

> Considering the claimant's activities; the lack of hospitalizations or frequent emergency room visits for pain; the lack of alternative treatment modalities, other than medication, for pain; the absence of treatment by a mental health professional and no recommendation for such; the absence of finding on examination of strength deficits or gait abnormality; and the opinion of Dr. George notwithstanding, I do not find the allegations of disabling pain and limited functional capacity to be credible.

(Tr. 18).

The defendant argues that the Magistrate Judge specifically rejected the ALJ's conclusion that the plaintiff was not fully credible because he did not require frequent hospitalizations for his impairments on the grounds that the record showed three emergency room visits where the plaintiff complained of pain, leg numbness, or reactions to pain medication. However, the defendant argues that two of these visits occurred before the plaintiff's alleged onset date, and therefore, the ALJ did not improperly reject the plaintiff's credibility due to infrequent hospitalizations or emergency room treatment.

This court finds that the defendant limits her objections on this issue to the single matter of the number of hospitalizations, which is clearly of limited relevance. The court finds that the Magistrate Judge correctly concludes that the ALJ improperly evaluated the plaintiff's pain and other symptoms. The court finds that it is irrelevant that two of the plaintiff's three emergency room visits were before the alleged onset date, since they were after the back surgery to which the plaintiff's disability relates. The issue that is relevant is whether the pain is credible, and the number of emergency room visits is merely one factor to support this. In any event, the Magistrate Judge also concludes in the Report that:

> In finding the plaintiff less than credible, the ALJ also relied upon the "lack of alternative treatment modalities other than medication". The plaintiff had back surgery in 1997, and has consistently experienced pain since then. There is no indication in the record that the plaintiff's doctors have recommended any other treatment which he has refused or not sought. To find the plaintiff less than credible because the only alternative he has is narcotic pain medication seems to miss the mark. The extensive medical records demonstrate that the plaintiff suffers from lower back pain for which he has found little relief. In addition, both the consulting physicians specifically noted that the plaintiff had pain radiating into his left leg as a result of chronic low back pain (Tr. 171-172; 207-209). Clearly, the ALJ failed to properly evaluate the plaintiff's subjective complaints.

This court also notes that Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record."

Furthermore, it "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." SSR 96-7p. This court also finds that the ALJ's conclusion with regard to the plaintiff's credibility, which is cited above, violates the specificity requirements of SSR 96-7p.

For the reasons stated above, the court finds the defendant's objections in this regard are without merit.

## **Conclusion**

On the record before it, this court must overrule all of the defendant's objections. After carefully reviewing the record in this matter, the applicable law, and the position of the parties, the court reverses the Commissioner's decision, finding that it not supported by substantial evidence.

As noted above, the Magistrate Judge has recommended to this court that the case be remanded to the Commissioner to take the appropriate action for the awarding of benefits. The defendant objects to this recommendation and argues that the case should be remanded for further administrative proceedings. Under 42 U.S.C. § 405(g): "[t]he Court shall have power to enter, upon the pleadings and transcript of the record a judgment affirming, modifying, or reversing the Commissioner of Social Security with or without remanding the cause for a hearing." Remanding for an award of benefits is appropriate when "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." Breeden v. Weinberger, 493 F.2d 1002, 1012 (4th Cir. 1974). In such a case, an adverse decision on remand could not "withstand judicial review," therefore, reversal for an award of benefits is appropriate without the additional step of directing that the case be remanded to the Commissioner for further proceedings. Id.; see also Coffman v. Bowen, 829 F.2d 514 (4th Cir. 1987). After

considering the fact that the treating physician's opinion should have been afforded controlling weight, as well as the plaintiff's significant mental limitations which were not properly considered by the VE, along with the other deficiencies noted above, including the failure to include all of the appropriate limitations in the hypothetical to the VE, this court finds that the Commissioner's decision is not supported by substantial evidence and that reopening the record for more evidence would serve no useful purpose.[1]

For the foregoing reasons, all objections are overruled, the Report and Recommendation of the Magistrate Judge is incorporated herein, and the decision of the Commissioner is hereby **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g), with a **REMAND** of the cause to the Commissioner for an award of benefits.

**IT IS SO ORDERED**

                                        s/ R. Bryan Harwell
                                        R. Bryan Harwell
                                        United States District Judge

March 29, 2006
Florence, South Carolina

---

[1] The court notes that even without properly considering the plaintiff's mental functioning and other limitations, the VE still found that the only jobs the plaintiff had the residual functional capacity to perform in the national economy were the jobs of sorter and inspector.